**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | **Case No. 1:24-cv-07334-JLR** |
| **v.** | |
| **MANGO LABS, LLC, MANGO DAO, and BLOCKWORKS FOUNDATION,** | |
| **Defendants.** | |

**UNITED STATES SECURITES AND EXCHANGE COMMISSION'S**
**MEMORANDUM IN OPPOSITION TO DEFENDANT MANGO LABS'**
**RULE 60(B) MOTION FOR RELIEF FROM FINAL JUDGMENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 4

   I.   The Legal Standard ................................................................................................... 4

      A.   Rule 60(b)(6) ................................................................................................. 4

      B.   Rule 60(b)(5) ................................................................................................. 6

   II.   Mango Labs Should Not Be Allowed to Avoid Its Consented-To Final Judgment. .......... 7

   III.   The SEC's Dismissal of Certain Other Crypto-Related Cases Does Not
       Constitute "Exceptional Circumstances" Justifying Relief Under Rule 60(b)(6). ............. 9

   IV.   A Change in the SEC's Approach to Crypto-Related Matters Does Not
       Entitle Mango Labs to Retroactively Undo Its Consented-To Final Judgment. ............... 12

   V.   The Final Judgment Is Not Inequitable Under Rule 60(b)(5). ........................................ 14

CONCLUSION .................................................................................................................... 16

# TABLE OF AUTHORITIES

**Federal Cases**                                                                    **Page(s)**

*Benenson v. Comm'r of Internal Revenue,*
   910 F.3d 690 (2d Cir. 2018) ................................................. 13

*BLOM Bank SAL v. Honickman,* No. 23-1259,
   605 U.S. ___, 2025 WL 1583305 (June 5, 2025) ......................... 4

*Coinbase, Inc. v. SEC,*
   126 F.4th 175 (3d Cir. 2025) ............................................... 13

*Coltec Indus. v. Hobgood,*
   280 F.3d 262 (3d Cir. 2002) ................................................. 8

*Horne v. Flores,*
   557 U.S. 433 (2009) ........................................................... 6

*Lutheran Church-Missouri Synod v. FCC,*
   154 F.3d 487 (D.C. Cir. 1998) ............................................. 13

*Marrero Pichardo v. Ashcroft,*
   374 F.3d 46 (2d Cir. 2004) .................................................. 13

*Nemaizer v. Baker,*
   793 F.2d 58 (2d Cir. 1986) ............................................. 4-5, 7

*Nicosia v. Amazon.com, Inc.,* No. 14-CV-4513,
   2021 WL 4480487 (E.D.N.Y. Sept. 30, 2021) ......................... 6

*NML Cap., Ltd. v. Republic of Argentina,* No. 14-cv-8601(TPG),
   2016 WL 715732 (S.D.N.Y. Feb. 19, 2016) ........................... 12

*Patterson v. Newspaper & Mail Deliverers' Union of New York & Vicinity,*
   13 F.3d 33 (2d Cir. 1993) ................................................... 15

*Rufo v. Inmates of Suffolk County Jail,*
   502 U.S. 367 (1992) ...................................................... 6-7, 14

*Sampson v. Radio Corp. of America,*
   434 F.2d 315 (2d Cir. 1970) ................................................. 5

*SEC v. Ahmed,* No. 15-cv-13042-ADB,
   2021 WL 916266 (D. Mass. Mar. 10, 2021) ........................... 9

*SEC v. Alexander,* No. 06-cv-3844,
   2013 WL 5774152 (E.D.N.Y. Oct. 24, 2013) ........................... 5

*SEC v. Allaire,* No. 03-cv-4087,
    2019 WL 6114484 (S.D.N.Y. Nov. 18, 2019).........................................................4

*SEC v. Binance Holdings Ltd.*, No. 1:23-cv-01599 (D.D.C.) ..................................9-10

*SEC v. Bronson,*
    602 F. Supp. 3d 599 (S.D.N.Y. 2022) ..............................................................6, 15

*SEC v. Clifton,*
    700 F.2d 744 (D.C. Cir. 1983) ...........................................................................8

*SEC v. Coinbase, Inc.*, No. 1:23-cv-04738 (S.D.N.Y.) ...........................................10

*SEC v. Conradt,*
    309 F.R.D. 186 (S.D.N.Y. 2015), *aff'd* 696 Fed. App'x 46 (2d Cir. 2017) ...................5-6, 10

*SEC v. Consensys Software Inc.*, No. 1:24-cv-04578 (E.D.N.Y.) ..................................9

*SEC v. Cumberland DRW LLC*, No. 1:24-cv-09842 (N.D. Ill.) ...................................9

*SEC v. Gemini Trust Co., LLC*, No. 1:23-cv-00287 (S.D.N.Y.) ...................................9

*SEC v. Lee,* No. 13 CIV. 5185 (RMB),
    2025 WL 2208116 (S.D.N.Y. Aug. 4, 2025)........................................................6, 9, 10

*SEC v. Longfin Corp.,* No. 18-cv-2977,
    2020 WL 4194484 (S.D.N.Y. July 21, 2020), *aff'd sub nom.*
    *SEC v. Altahawi*, No. 20-cv-2751, 849 Fed. App'x 323 (Mem) (2d Cir. June 8, 2021) ..........5

*SEC v. Muroff,* No. 1:17-cv-00180-EJL,
    2017 WL 10768468 (D. Idaho Nov. 16, 2017) ...................................................8, 9

*SEC v. NIR Group, LLC,* No. 11-cv-4723,
    2022 WL 900660 (E.D.N.Y. Mar. 28, 2022) ..............................................6, 7, 9, 10

*SEC v. Payward, Inc.*, No. 3:23-cv-06003 (N.D. Cal.) ..........................................9

*SEC v. Ripple Labs, Inc.*, No. 1:20-cv-10832-AT-SN (S.D.N.Y.) .........................11, 12

*SEC v. Romeril,*
    15 F.4th 166 (2d Cir. 2021) ..........................................................................12

*SEC v. Tsao,*
    317 F.R.D. 31 (D. Md. 2016), *aff'd,* 671 F. App'x 157 (4th Cir. 2016) ......................14

*Stevens v. Miller,*
    676 F.3d 62 (2d Cir. 2012) ............................................................................12

*Tapper v. Hearn,*
    833 F.3d 166 (2d Cir. 2016) .......................................................................6, 13

*United States v. Bank of New York,*
   14 F.3d 756 (2d Cir. 1994) ................................................................. 5, 7-8, 16

*United States v. Mendoza,*
   464 U.S. 154 (1984) ................................................................. 13-14

**Federal Statutes**

15 U.S.C. § 77e(a), Securities Act of 1933 Section 5(a) ........................................ 2

15 U.S.C. § 77e(c), Securities Act of 1933 Section 5(c) ........................................ 2

15 U.S.C. § 78o(a), Securities Exchange Act of 1934 Section 15(a) ................................... 1, 2, 3

**Rules**

17 C.F.R. § 200.735-4(d)(2)(ii)(A) .........................................................13

17 C.F.R. § 202.5(e) ...................................................................15

Fed. R. Civ. P. 60(b) .................................................................. *passim*

**Other**

*In the Matter of Advanced Practice Advisors, LLC & Paul C. Spitzer,* Release No. 6889,
   2025 WL 1735741 (June 23, 2025) ........................................................ 11

*In the Matter of Certain Off-Channel Communications Settled Orders,* Release No. 6874,
   2025 WL 1101495 (Apr. 14, 2025) ........................................................ 11

*In the Matter of Certain Off-Channel Communications Settled Orders,* Release No. 6890,
   2025 WL 1783587 (June 26, 2025) ........................................................ 11

## INTRODUCTION

Plaintiff United States Securities and Exchange Commission ("SEC" or "Commission") respectfully submits this memorandum in opposition to Defendant Mango Labs, LLC's ("Mango Labs") June 28, 2025 Motion (Dkt. No. 14) seeking relief from its agreed-to, non-appealed October 1, 2024 Final Judgment (Dkt. No. 9) pursuant to Federal Rule of Civil Procedure 60(b) (the "Motion").

As explained below, Mango Labs, advised by counsel, negotiated and agreed to entry of a Final Judgment that: (a) permanently enjoined it from violating Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78o(a), by acting as an unregistered broker; (b) required certain undertakings; and (c) required payment of a $111,614 civil penalty. (Dkt. No. 4.) Based on Mango Labs' consent, which was signed by both Mango Labs and its current counsel (Dkt. No. 4 at 12), this Court entered the Final Judgment and closed this case over nine months ago. (Dkt. No. 9.)

Despite all of this, Mango Labs now invokes Rule 60(b) — an extraordinary remedy warranted only in exceptional circumstances — to undo its consented-to Final Judgment because, it claims, the SEC's recent dismissal of certain unrelated, pending, and unsettled crypto-related litigations involving other defendants and different crypto assets somehow renders this closed and final settlement now unfair. But the SEC's dismissal of certain unrelated litigations where there were no consent judgments is irrelevant to this case where Mango Labs ***agreed*** to the Final Judgment. Rule 60(b) does not permit a party to go back on the finality of an agreed-upon settlement even in the wake of a policy change or the dismissal of unrelated cases. And Mango Labs has not otherwise demonstrated exceptional circumstances that justify undoing the consented-to Final Judgment or that the Final Judgment is now inequitable. For all of these reasons, the Motion should be denied.

## BACKGROUND

On September 27, 2024, the SEC filed this case against Defendants Mango Labs, Mango DAO, and Blockworks Foundation as a settled action. (Dkt. No. 1.) The Complaint alleged that Mango Labs and Blockworks Foundation were responsible for the development and operation of Mango Markets, a crypto asset trading platform that had operated since approximately August 2021. (*Id*. ¶ 1.) In doing so, the Complaint alleged that Mango Labs and Blockworks Foundation acted as brokers without registering with the SEC in violation of Section 15(a) of the Exchange Act. (*Id*. ¶¶ 4-5, 8.) The Complaint also alleged that Blockworks Foundation and Mango DAO, the governing body of Mango Markets, engaged in an unregistered offering of crypto assets called "MNGO" as part of an investment contract to hundreds of investors worldwide, in violation of Sections 5(a) and (c) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a) and 77e(c). (*Id*. ¶¶ 2-3, 7.)

On October 1, 2024, the SEC filed a letter motion asking the Court to approve final consent judgments as to all three Defendants. (Dkt. No. 7.) With respect to Mango Labs, the only Defendant seeking to set aside the judgment to which it agreed, the SEC filed a proposed Final Judgment and the Consent of Mango Labs ("Consent"). (Dkt. No. 4.) The Consent was signed by Mango Labs and "approved as to form" by its same counsel now seeking to undo the settlement. (*Id*. at 12.) In the Consent, Mango Labs agreed to the entry of a permanent injunction enjoining it from violating Section 15(a) of the Exchange Act, certain undertakings, and a $111,614 civil penalty. (*Id*. at 6-8, ¶¶ 2, 4.)

On October 1, 2024, the Court entered the Final Judgment as to Mango Labs, as well as separate final judgments as to the other Defendants. (Dkt. Nos. 8-10.) In the Mango Labs Final Judgment, the Court ordered Mango Labs to comply with the same provisions to which it agreed in the Consent, namely: (1) a permanent injunction barring Mango Labs from violating Section

15(a) of the Exchange Act; (2) a $111,614 civil penalty; and (3) six undertakings. (Dkt. No. 9 §§ I-III.) Pursuant to the Final Judgment, Mango Labs settled the case without admitting or denying the allegations in the Complaint. (*Id*. at 1.)

Mango Labs gave up various rights to reach the agreed settlement. In its Consent, which was signed by Mango Labs and "approved as to form" by its current counsel, Mango Labs:

- "consent[ed] to the entry of the [F]inal Judgment";

- "waive[d] the entry of findings of fact and conclusions of law";

- "waive[d] the right, if any, to a jury trial";

- "waive[d] the right, if any, … to appeal from the entry of the Final Judgment";

- "enter[ed] into this Consent voluntarily and represent[ed] that no threats, offers, promises, or inducements of any kind have been made by the Commission . . . to induce [Mango Labs] to enter into this Consent";

- acknowledged that the Consent resolved "the claims asserted . . . in this civil proceeding"; and

- agreed that it "w[ould] not take any action . . . denying, directly or indirectly, any allegation in the complaint . . . ."

(Dkt. No. 4 at 6-12, ¶¶ 2, 4-7, 11-12.)

On October 18, 2024, Mango Labs paid its $111,614 civil penalty to the SEC. (Declaration of Alyssa A. Qualls ("Qualls Decl.") ¶ 2 & Ex. 1.) By letter dated December 6, 2024, counsel for Mango Labs certified to the SEC that it had complied with all of the undertakings set forth in the Final Judgment, including making all MNGO in its possession and

control unavailable for trading.[1] (Qualls Decl. ¶ 4 & Ex. 2.)

Before signing the consent, Mango Labs and its counsel never suggested that its settlement of this case would be contingent on the outcome of any other case or position of the SEC. (Qualls Decl. ¶ 6.) Nor did Mango Labs advise that it would seek to revoke its consent or void its agreed-to Final Judgment based on the outcome of any other case or any future position of the SEC. (*Id.*) Instead, in September 2024, Mango Labs signed the consent agreeing to all of the terms therein.

## **ARGUMENT**

### I.    **The Legal Standard**

Mango Labs seeks to vacate the Final Judgment under Federal Rules of Civil Procedure 60(b)(6) and 60(b)(5). As discussed below, relief under either provision is not justified.

#### A.    **Rule 60(b)(6)**

Rule 60(b)(6) permits a district court to "relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any . . . reason that justifies relief." Fed. R. Civ. P. 60(b)(6). A Rule 60(b)(6) motion should be granted only upon a showing of "extraordinary circumstances." *BLOM Bank SAL v. Honickman*, No. 23-1259, 605 U.S. ___, 2025 WL 1583305, at *4-6 (June 5, 2025); *see also SEC v. Allaire,* No. 03-cv-4087, 2019 WL 6114484, at *2 (S.D.N.Y. Nov. 18, 2019). In applying this Rule, courts are to "strike[] a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). While such "relief is addressed to the sound discretion of the district court," it is considered "extraordinary judicial relief" that may be "invoked only upon a showing

---

[1] Mango DAO and Blockworks Foundation also paid their respective civil penalties and certified compliance with their respective undertakings. (Qualls Decl. ¶¶ 2-5 & Exs. 1-3.) Neither Blockworks Foundation (represented by the same counsel as Mango Labs) nor Mango DAO (represented by different counsel) has sought Rule 60(b) relief.

of exceptional circumstances." *Id.* at 61.

Where a defendant "wishes to disturb a consent judgment," the Rule 60(b)(6) standard is "even harder to reach." *SEC v. Alexander,* No. 06-cv-3844, 2013 WL 5774152, at *2 (E.D.N.Y. Oct. 24, 2013); *see also United States v. Bank of New York,* 14 F.3d 756, 759 (2d Cir. 1994) ("When a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect."); *Sampson v. Radio Corp. of America,* 434 F.2d 315, 317 (2d Cir. 1970) ("A motion [for relief from a judgment] under [Rule] 60(b) cannot be used to avoid the consequences of a party's decision to settle the litigation . . . ."). Thus, where a defendant makes a "free, bilateral decision[] to settle," a "failure to properly estimate the loss or gain from entering a settlement agreement is not an extraordinary circumstance that justifies relief" from the terms of the settlement. *Bank of New York,* 14 F.3d at 760. "To hold otherwise would undermine the finality of judgments in the litigation process." *Id.* at 759; *see also SEC v. Longfin Corp.,* No. 18-cv-2977, 2020 WL 4194484, at *2 (S.D.N.Y. July 21, 2020) (Rule 60(b)(6) "is not intended to relieve a party from an agreement that he voluntarily entered but now regrets."), *aff'd sub nom. SEC v. Altahawi*, No. 20-cv-2751, 849 Fed. App'x 323 (Mem) (2d Cir. June 8, 2021).

Where the parties have negotiated at arm's length and the court has approved the settlement, courts generally refuse to undermine the agreement over one party's objection and hold that "a deal is a deal." *SEC v. Conradt,* 309 F.R.D. 186, 188 (S.D.N.Y. 2015), *aff'd* 696 Fed. App'x 46 (2d Cir. 2017) ("[R]elief under Rule 60(b) is not intended to allow one side of a settlement agreement to obtain the benefits of finality while placing the other side at risk that future judicial decisions will deprive them of the benefit of their bargain.") (rejecting defendant's argument that his consent judgment was "no longer equitable" because his guilty plea in a

5

parallel criminal proceeding had been vacated); *see also SEC v. NIR Group, LLC*, No. 11-cv-4723, 2022 WL 900660, at *3 (E.D.N.Y. Mar. 28, 2022) (rejecting settling defendant's argument that "his equal protection rights were violated" because the co-defendant entered into a consent judgment first where no fine was levied); *SEC v. Lee*, No. 13 CIV. 5185 (RMB), 2025 WL 2208116, at *1 (S.D.N.Y. Aug. 4, 2025) (denying Rule 60(b) motion to vacate consent judgment where defendant failed to present evidence of extraordinary circumstances).

### B.    Rule 60(b)(5)

Separately, Rule 60(b)(5) permits a court to relieve a party from a judgment where "applying it prospectively is no longer equitable," Fed. R. Civ. P. 60(b)(5), such as when "'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *SEC v. Bronson*, 602 F. Supp. 3d 599, 615-616 (S.D.N.Y. 2022) (quoting *Horne v. Flores*, 557 U.S. 433, 447 (2009)). "In order to obtain relief under this provision, a movant must show, first, that the challenged order is prospective in nature, and second, that it would be inequitable to permit the order to remain in place." *Id*. (quoting *Nicosia v. Amazon.com, Inc.*, No. 14-CV-4513, 2021 WL 4480487, at *2 (E.D.N.Y. Sept. 30, 2021)). Courts have held that a final judgment has "'prospective application' for purposes of Rule 60(b)(5) only where it is 'executory or involves the supervision of changing conduct or conditions,'" such as an injunction. *Bronson,* 602 F. Supp. 3d at 614 (quoting *Tapper v. Hearn*, 833 F.3d 166, 170 (2d Cir. 2016)).

To prevail under Rule 60(b)(5), the moving party must demonstrate that there is a "significant change in circumstances" that warrants reexamination of the original judgment. *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992). The movant may meet this burden by showing "a significant change either in factual conditions or in law." *Id*. at 384. Modification may be appropriate "when changed factual conditions make compliance with the decree

substantially more onerous[,] . . . when a decree proves to be unworkable because of unforeseen obstacles[,] or when enforcement of the decree without modification would be detrimental to the public interest . . . . " *Id*. Relief is not available, however, merely because "it is no longer convenient to live with the terms of a consent decree." *Id*. at 383. Further, "modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." *Id*. at 385.

## II.    Mango Labs Should Not Be Allowed to Avoid Its Consented-To Final Judgment.

Invoking Rules 60(b)(6) and 60(b)(5), Mango Labs asks to be relieved from its negotiated and consented-to settlement because the SEC has recently dismissed certain pending and unsettled litigations involving different defendants and different crypto assets, which occurred more than five months after the Final Judgment was entered in this case. The instant Motion fails to show extraordinary circumstances that justify relief or that it would be inequitable to permit the Final Judgment to remain in place.

Courts have long recognized that finality is fundamental to our judicial system. *See, e.g.*, *Bank of New York*, 14 F.3d at 760; *Nemaizer*, 793 F.2d at 61; *see also see NIR Grp.*, 2022 WL 900660, at *2 (collecting cases). This principle applies with particular force where, as here, the parties ***agreed*** to a final resolution, one that was the subject of extensive negotiation. Thus,

> [w]hen a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect. In the instant case, [the defendant] made a conscious and informed choice of litigation strategy and cannot in hindsight seek extraordinary relief. To hold otherwise would undermine the finality of judgments in the litigation process.

*Bank of New York*, 14 F.3d at 759 (citations omitted); *see also id.* at 760 ("[T]he government and [the defendant] made free, bilateral decisions to settle. Each bore the risks of litigation equally. A failure to properly estimate the loss or gain from entering into a settlement agreement is not an

extraordinary circumstance that justifies relief under Rule 60(b)(6).”); *SEC v. Clifton*, 700 F.2d 744, 748 (D.C. Cir. 1983) (noting that courts are “reluctant to upset” SEC consent judgments). The reasons are self-evident: “the parties should not be left guessing about the finality and hence efficacy of the settlement.” *SEC v. Muroff*, No. 1:17-cv-00180-EJL, 2017 WL 10768468, at *3 (D. Idaho Nov. 16, 2017); *see also Coltec Indus. v. Hobgood*, 280 F.3d 262, 275 (3d Cir. 2002) (denying motion under Rule 60(b) where defendant settled but law subsequently changed; “[E]ven if [defendant’s] decision to settle was improvident in hindsight, the decision has been made and cannot be revisited …. Enforcing [defendant’s] bargain is not a punishment and is not unfair.”).

Here, Mango Labs voluntarily and deliberately determined to settle this matter. In doing so, it received certain benefits, such as a “no-admit no-deny” settlement, and forgoing the time, expense, and risk of litigation. *See Muroff*, 2017 WL 10768468, at *3 (“The twin purposes of the consent Judgment are to avoid cost and minimize risk.”); *see generally Clifton*, 700 F.2d at 748 (noting that consent judgments “conserve [the SEC’s] own . . . resources,” as well as “judicial resources”; and in exchange for consenting, defendants obtain various benefits for themselves). By settling to the terms outlined above, Mango Labs avoided the risk of litigating and then losing on the merits and having the Court impose additional injunctive restrictions and a higher civil penalty. Having already obtained the benefit of avoiding the substantial costs and risks by settling instead of continuing to litigate, Mango Labs should not now be allowed to also avoid the settled outcome to which it agreed.

As explained above, Mango Labs made this decision while advised by counsel. Under these circumstances, there is simply no reason to throw out the agreement that Mango Labs now does not like nine months after the Final Judgment was entered. *See, e.g.*, *NIR Group,* 2022 WL

900660, at *3 (refusing to vacate a consented-to final judgment because of due process and equal protection claims, state law litigation, change in law, or tax consequences of judgment); *Muroff*, 2017 WL 10768468, at *2 (refusing to vacate a consented-to final judgment after change in law following Supreme Court decision); *SEC v. Ahmed*, No. 15-cv-13042-ADB, 2021 WL 916266, at *4 (D. Mass. Mar. 10, 2021) (same); *Lee*, 2025 WL 2208116, at *1 (refusing to vacate five-year-old consented-to final judgment where no extraordinary circumstances existed). The Motion should be denied because Mango Labs agreed to the Final Judgment.

Finally, if Mango Labs' rationale were to prevail here, the finality interests in settlements, and thus the incentive to settle, would be severely undermined. Any party could move a court for relief from a settlement the party later regretted entering. Not only could this lead to the undoing of numerous agreements and the reopening of long-closed cases, but it would substantially deter parties from ever settling cases in the future knowing the settlement could easily be undone.

## III.    The SEC's Dismissal of Certain Other Crypto-Related Cases Does Not Constitute "Exceptional Circumstances" Justifying Relief Under Rule 60(b)(6).

In support of its Motion, Mango Labs claims that it is subject to an inequitable settlement barring it from soliciting any trading platform to allow trading in MNGO tokens and offering or selling MNGO directly or indirectly on the Mango Markets trading platform. (Br. at 3.) Mango Labs claims that these injunctions are inequitable since, starting in March 2025, over five months after the Court entered the Final Judgment here, the SEC dismissed certain other pending crypto-related litigations involving different defendants and other crypto assets. Mango Labs points to the following matters: *SEC v. Cumberland DRW LLC*, No. 1:24-cv-09842, at ECF No. 46 (Mar. 27, 2025) and ECF No. 47 (Mar. 31, 2025) (N.D. Ill.); *SEC v. Consensys Software Inc.*, No. 1:24-cv-04578, at ECF No. 25 (E.D.N.Y. Mar. 27, 2025); *SEC v. Payward, Inc.*, No. 3:23-cv-06003, at ECF No. 127 (N.D. Cal. Mar. 27, 2025); *SEC v. Binance Holdings Ltd.*, No. 1:23-cv-

01599, at ECF No. 301 (D.D.C. May 29, 2025); *SEC v. Coinbase, Inc.*, No. 1:23-cv-04738, at ECF No. 178 (S.D.N.Y. Feb. 28, 2025) and ECF No. 179 (S.D.N.Y. Mar. 4, 2025). (Br. at 7-8.)[2] But the dismissals of these crypto-related cases are distinguishable on several grounds.

Mango Labs neglects to mention that these dismissals were agreed to by all parties and occurred in active litigations that were pending before various courts before liability had been determined or remedies imposed. While the SEC and the respective defendants entered into agreed stipulations of dismissal in those matters, none of the cases were dismissed over the objection of the SEC, and none involved motions under Rule 60(b). Critically, not one of those cases involved the dismissal of a consented-to final judgment in a closed case, as exists here. Indeed, Mango Labs does not point to any agreement by the SEC to dismiss a settled and closed case. Moreover, each of the stipulations for dismissal of those cases states that the "Commission's decision to seek dismissal of this Litigation does not necessarily reflect the Commission's position on any other case [or litigation or proceeding]." *See, e.g.*, *Coinbase, Inc.*, No. 1:23-cv-04738, at ECF No. 176 (S.D.N.Y. Feb. 27, 2025).

Where litigants have sought to modify judgments in ***settled*** cases, the Commission has repeatedly opposed such requests. *See, e.g.*, *Conradt,* 309 F.R.D. at 188; *NIR Group, LLC*, 2022 WL 900660, at *3; *Lee*, 2025 WL 2208116, at *1. And where litigants have sought to modify orders in ***settled*** administrative proceedings, the Commission has repeatedly denied such requests, including requests made in the last few months. For example, *In the Matter of Certain Off-Channel Communications Settled Orders*, Release No. 6874, 2025 WL 1101495 (Apr. 14, 2025), various Respondents moved to modify their settled orders, arguing that the SEC should "equalize" certain undertakings with those contained in more recent settlements. *Id.* at *1. In

---

[2] Mango Labs also cites *SEC v. Gemini Trust Co., LLC*, No. 1:23-cv-00287, at ECF No. 76 (S.D.N.Y. Apr. 2, 2025), but that case has not been dismissed.

denying the requests, the Commission held that the Respondents had not demonstrated a "compelling" or "extraordinary" interest to justify the modification of settled orders since the "only arguably changed circumstance they identify is that later parties negotiated what Respondents believe to be better settlement terms." *Id.* at *1. *See also In the Matter of Advanced Practice Advisors, LLC & Paul C. Spitzer*, Release No. 6889, 2025 WL 1735741 (June 23, 2025) (denying motion to vacate settled order); *In the Matter of Certain Off-Channel Communications Settled Orders*, Release No. 6890, 2025 WL 1783587 (June 26, 2025) (denying motion to modify settled orders). So, too, here. Any decision to settle contains the risk that comparable cases later could reach different outcomes. Such a risk is inherent to every settlement and does not provide "exceptional circumstances" to justify overturning an agreed-to settlement over another party's objection.

Mango Labs also points to *SEC v. Ripple Labs, Inc.*, No. 1:20-cv-10832-AT-SN, ECF No. 987 (S.D.N.Y. June 12, 2025), where the parties had ***jointly*** asked the Court for an indicative ruling on a joint Rule 60(b)(6) Motion to modify a final judgment. However, *Ripple* is distinguishable on a number of grounds and otherwise does not support Mango Labs' position. First, when the joint motion requesting an indicative ruling was filed, *Ripple* was on appeal and the outcome of the case remained unknown given the Second Circuit's review and attendant potential for additional litigation in the district court.[3] Here, the parties settled and Mango Labs waived its right to appeal. *See SEC v. Romeril*, 15 F.4th 166, 171 (2d Cir. 2021) (a Rule 60(b) motion is not a substitute for a direct appeal); *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (same). Thus, Mango Labs' consented-to Final Judgment is the final outcome, and the case is

---

[3] In August 2025, after the district court rejected the parties' joint motion for an indicative ruling, the parties jointly stipulated to dismiss their appeals. *See SEC v. Ripple Labs, Inc.*, No. 24-2648, Dkt. No. 75 (2d Cir. Aug. 22, 2025).

now closed.

Second, **both sides** in *Ripple* requested relief under Rule 60(b)(6) as part of an agreed-upon settlement to resolve then pending cross-appeals, where Ripple also agreed to pay the SEC a $50 million civil penalty. *Ripple*, No. 1:20-cv-10832-AT-SN, ECF No. 983, at 2. Here, there is no agreement of the parties. Only Mango Labs has moved for relief, and the SEC opposes it.[4]

Third, the *Ripple* court denied the requested relief, holding that no exceptional circumstances existed despite the key differences in procedural posture from Mango Labs' case on which the *Ripple* parties based their motion. *Id.*, ECF No. 989, at 5. It would be inconsistent for this Court to find exceptional circumstances to justify Mango Labs' Rule 60(b)(6) Motion, over the SEC's objection, when Judge Torres did not find any exceptional circumstances existed when both parties sought the district court's approval of a settlement that dissolved previously ordered injunctive relief and reduced the civil penalty amount. In short, the outcome in *Ripple* supports the denial of Mango Labs' Rule 60(b) motion.

## IV.    A Change in the SEC's Approach to Crypto-Related Matters Does Not Entitle Mango Labs to Retroactively Undo Its Consented-To Final Judgment.

Mango Labs argues that the SEC has a new policy with regard to crypto-related activities based on statements by individual Commissioners. (Br. at 5-7, 13-15.) To begin with, "a mere change in decisional law" standing alone — much less a change in one agency's policy — "does not constitute an 'extraordinary circumstance' for the purposes of Rule 60(b)(6)." *Tapper*, 833 F.3d at 172; *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 56 (2d Cir. 2004). That principle applies with particular force where, as here, a Rule 60(b) motion is filed unilaterally by one party

---

[4] The existence of a *settlement agreement* that called for Rule 60(b) relief was similarly a key consideration in another case Mango Labs repeatedly invokes, *NML Cap., Ltd. v. Republic of Argentina*, No. 14-cv-8601 (TPG), 2016 WL 715732 (S.D.N.Y. Feb. 19, 2016). (Br. at 10-11, 13-14, 18.) The lack of an agreement here to modify Mango Labs' Final Judgment likewise distinguishes *NML Capital*.

and intended to compel a district court to **nullify** a settlement, rather than in a case (like *Ripple*) where the parties jointly file a Rule 60(b) motion to obtain the district court's **approval** of a settlement. Even if the SEC has undertaken a new approach, or if individual Commissioners have made statements regarding a new approach, that would "not bind the Commission to a result in any particular case." *Lutheran Church-Missouri Synod v. FCC*, 154 F.3d 487, 489 (D.C. Cir. 1998); *see also Coinbase, Inc. v. SEC*, 126 F.4th 175, 191 (3d Cir. 2025) ("[I]ndividual Commissioners … do not speak for the SEC, and their statements do not necessarily reflect the agency's official position."); 17 C.F.R. § 200.735-4(d)(2)(ii)(A) (same).

Further, even if the SEC has undertaken a new approach to crypto-related matters, that has no retroactive application to litigation in which a final judgment was entered and there are no appeal rights. Contrary to Mango Labs' assertion otherwise, courts have long upheld the principle that the Executive Branch may take different positions in different cases involving different parties, thus rejecting the notion that parties may use nonmutual collateral estoppel against the government. *See, e.g., United States v. Mendoza*, 464 U.S. 154, 163 (1984); *Benenson v. Comm'r of Internal Revenue*, 910 F.3d 690, 697 (2d Cir. 2018). As *Mendoza* recognized, "the panoply of important public issues raised in governmental litigation may quite properly lead successive administrations of the Executive Branch to take differing positions with respect to the resolution of a particular issue." *Id.* at 161. The Court held that the fact that the government takes one position in earlier litigation with one party does not bind it to take the same position in later, different litigation with a different party. *Id.* at 163. Thus, the fact that the SEC has dismissed certain other unrelated and pending crypto-related litigation in recent months does not require the same resolution for this litigation.

The Court should thus hold Mango Labs to the deal it freely negotiated knowing a future

Commission could undertake a new approach to crypto-related matters. The Court should likewise avoid setting precedent that would allow countless defendants to undo settlements based on subsequent changes in government policies or priorities.

## V.    The Final Judgment Is Not Inequitable Under Rule 60(b)(5).

Mango Labs is not entitled to relief under Rule 60(b)(5) because Mango Labs has failed to demonstrate that applying the Final Judgment prospectively is no longer equitable. That Mango Labs apparently now finds that "it is no longer convenient to live with the terms of [the Final Judgment]," *Rufo,* 502 U.S. at 383, does not justify Rule 60(b)(5) relief.

Mango Labs argues (Br. at 15-16, 18) that the Final Judgment is now inequitable because others are not subject to its trading-related restrictions. But that is the very deal that Mango Labs struck — it would be subject to restrictions beyond those faced by other market participants. That result is thus not an "unforeseen" or "unintended consequence." (Br. at 16.) And Mango Labs has failed to demonstrate that compliance with those restrictions has become "substantially more onerous," much less "unworkable." *Rufo*, 502 U.S. at 384.

Mango Labs also argues (Br. at 16) that the Final Judgment is now inequitable because Mango Labs is subject to the Commission's "no-admit, no-deny" policy while the SEC can speak freely on crypto-related issues. But that is no "change in circumstance" (Br. at 16) — neither the burden of the "no-admit, no-deny" policy nor the Commission's ability to speak on crypto-related issues has changed since the Final Judgment was entered.[5]

---

[5] Mango Labs overstates the scope of the Commission's "no-admit, no-deny" policy. *Compare* Br. at 16 *with* 17 C.F.R. § 202.5(e) and ECF No. 9 at 10-11. Mango Labs baselessly claims that it, its principal, and "dozens of others from the Mango DAO . . . cannot speak out about the SEC's enforcement action" and "must remain silent." (Br. at 16.) But the policy Mango Labs complains of (despite its agreement last year to abide by it) does not require Mango Labs to "remain silent" or prevent it from "speaking out." Rather, the policy generally prohibits a settling defendant from "denying the allegations in the complaint." 17 C.F.R. § 202.5(e). Accordingly,

Finally, Mango Labs argues (Br. at 17-19) that it would be in the public interest to undo the Final Judgment. Not so. As an initial matter, Mango Labs relies on authority addressing the modification of consent decrees that seek "pervasive change in long-established practices affecting a large number of people." *Patterson v. Newspaper & Mail Deliverers' Union of New York & Vicinity*, 13 F.3d 33, 38 (2d Cir. 1993). But that is not the Final Judgment, which binds only Mango Labs. Moreover, contrary to Mango Labs' assertions otherwise, undoing the Final Judgment would not "protect the public interest in fair settlements," "encourag[e] settlements," or provide for "efficient judicial enforcement." (Br. at 18.) As discussed above, the opposite is true. *See supra* at 7-9, 14.

In short, Mango Labs' buyer's remorse is not a changed condition in fact or law that supports vacating a negotiated settlement over the SEC's objection under Rule 60(b)(5). *See, e.g., Bronson*, 602 F. Supp. 3d at 616 (denying Rule 60(b)(5) motion and holding that change in law regarding disgorgement awards inapplicable to injunctive relief); *SEC v. Tsao*, 317 F.R.D. 31, 34 (D. Md. 2016), *aff'd*, 671 F. App'x 157 (4th Cir. 2016) (denying Rule 60(b)(5) motion where no factual or legal change in circumstances concerning lifetime officer-and-director bar). Mango "made an unfettered and considered choice" to settle and "cannot be relieved from it" under Rule 60(b)(5). *Bank of New York*, 14 F.3d at 760.

---

Mango Labs is free to comment on "DeFi regulation" and the SEC's "enforcement approach" (Br. at 16) however it sees fit, so long as it doesn't deny the Complaint's allegations. Further, Mango DAO is not bound by Mango Labs' settlement. Notably, Mango DAO has not challenged *its* settlement with the SEC that, according to Mango Labs, impacts "dozens" of Mango DAO's personnel.

## **CONCLUSION**

For all of these reasons, the Motion should be denied.

Date:   August 28, 2025                    Respectfully submitted,

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION

*/s/ Alyssa A. Qualls*
Alyssa A. Qualls (AQ-4247)
Kristin Pauley (KP-7633)
Attorneys for Plaintiff
United States Securities and Exchange Commission
Chicago Regional Office
175 West Jackson Blvd., Suite 1450
Chicago, Illinois 60604
(312) 353-7390
(312) 353-7398 (facsimile)
QuallsA@sec.gov
PauleyK@sec.gov