**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | Case No. 1:24-cv-07334-JLR |
| Plaintiff, | |
| - against - | |
| MANGO LABS, LLC, MANGO DAO, AND BLOCKWORKS FOUNDATION, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**MOTION FOR RELIEF FROM JUDGMENT**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 3

     I.     The SEC's Historic Repudiation Constitutes Extraordinary Circumstances
           that Warrant Relief........................................................................................... 3

     II.    The Prospective Injunctions are Inequitable and Merit Set Aside Under
           Rule 60................................................................................................................ 6

     III.   Voluntary Consent does not Defeat Rule 60 Relief............................................ 8

CONCLUSION................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*City of Duluth v. Fond Du Lac Band of Lake Superior Chippewa*,
  702 F.3d 1147 (8th Cir. 2013) .......................................................................8, 9

*Cochran v. U.S. Securities and Exch. Comm'n*,
  20 F.4th 194 (5th Cir. 2021), *aff'd sub nom. Axon Enter., Inc. v. Fed. Trade
  Comm'n*, 598 U.S. 175 (2023) (Gorsuch, J., concurring)..........................................7

*Coinbase, Inc. v. SEC*,
  126 F.4th 175 (3d Cir. 2025) ...................................................................5

*Crosby v. Bradstreet Co.*,
  312 F.2d 483 (2d Cir. 1963)...................................................................8

*Eisen v. Temple U.*,
  No. CIV.A. 01-4165, 2002 WL 1565331 (E.D. Pa. July 9, 2002)...........................5

*Hamilton v. Lee*,
  188 F. Supp. 3d 221 (E.D.N.Y. 2016) ...................................................10

*Mandala v. NTT Data, Inc.*,
  88 F.4th 353 (2d Cir. 2023) ...................................................................8

*Marrero Pichardo v. Ashcroft*,
  374 F.3d 46 (2d Cir. 2004).....................................................................4

*Mobil Pipe Line Co. v. FERC*,
  676 F.3d 1098 (D.C. Cir. 2012) .............................................................5

*NML Cap., Ltd. v. Republic of Argentina*,
  No. 14-cv-8601 (TPG), 2016 WL 715732 (S.D.N.Y. Feb. 19, 2016), *aff'd sub
  nom. Aurelius Cap. Master, Ltd. v. Republic of Argentina*, 644 F. App'x 98
  (2d Cir. 2016)......................................................................................9

*Noranda Alumina, LLC v. Perez*,
  841 F.3d 661 (5th Cir. 2016) .................................................................5

*Overbey v. Mayor of Baltimore*,
  930 F.3d 215 (4th Cir. 2019) .................................................................8

*P.T. Busana Idaman Nurani v. Marissa by GHR Industries Trading Corp.*,
  151 F.R.D. 32 (S.D.N.Y. 1993*)* .............................................................10

*Pettiford v. City of Yonkers*,
  No. 14 CIV. 6271 (JCM), 2018 WL 3364394 (S.D.N.Y. July 10, 2018)................9

*Powell v. SEC*,
  No. 24-1899  (9th Cir. Aug. 6, 2025).....................................................2

*Rufo v. Inmates of Suffolk Cnty. Jail*,
  502 U.S. 367 (1992).............................................................................6

*Sec. & Exch. Comm'n v. Ripple Labs Inc.,*
   No. 1:20-cv-10832 AT SN .................................................................................................2, 3

*SEC v. Alexander,*
   No. 06-cv-3844, 2013 WL 5774152 (E.D.N.Y. Oct. 24, 2013) ............................................10

*SEC v. Lewis,*
   423 F. Supp. 2d 337 (S.D.N.Y. 2006) ...................................................................................6

*SEC v. Moraes,*
   No. 22-CV-8343 (RA), 2022 WL 15774011 (S.D.N.Y. Oct. 28, 2022) ..................................7

*Seven Elves, Inc. v. Eskenazi,*
   635 F.2d 396 (5th Cir. 1981) ................................................................................................9

*Tapper v. Hearn,*
   833 F.3d 166 (2d Cir. 2016) ..................................................................................................4

*U.S. v. Richards,*
   385 Fed. Appx. 691 (9th Cir. 2010) ......................................................................................8

*U.S.S.E.C. v. Citigroup Glob. Markets, Inc.,*
   752 F.3d 285 (2d Cir. 2014) ..................................................................................................9

*United States v. Swift & Co.,*
   286 U.S. 106 (1932) ..............................................................................................................9

*Univ. of Tex. M.D. Anderson Cancer Ctr. v. HHS,*
   985 F.3d 472 (5th Cir. 2021) ................................................................................................5

Defendant Mango Labs, LLC ("Mango") respectfully submits this Reply Memorandum in support of its Motion for Relief from Judgment pursuant to Federal Rule of Civil Procedure 60(b)(5) and 60(b)(6).

## INTRODUCTION

When speaking publicly, the SEC expresses an unprecedented repudiation of the enforcement policy that resulted in this case's injunctive relief as arbitrary and unfair. To the Court, however, the SEC claims that this is a mere routine policy shift. The dismissals that the Opposition brief attempts to distinguish, however, are not discrete but rather part of a systematic repudiation of an entire class of enforcement actions. The chart Mango Labs included with its motion, charting the SEC's allegations in its dismissed actions in comparison to those it made against Mango Labs, speaks volumes. They are the same theories. The SEC can point to no similar circumstance of such a repudiation in its history. Yet the SEC asks this Court to enforce ongoing injunctions against Mango Labs and the other settling parties that the government itself states are unfair, arbitrary, unjust, and counter to an interpretation that the agency now says should have been the law then just as it is now.

The ongoing injunctions in this case are far more onerous than the Opposition brief portrays. It is not just a 'follow the law' injunction. Mango Labs and the other settling parties are prohibited from trading MNGO tokens. This is despite the fact that there is an active market for MNGO currently being traded. The Mango DAO, for instance, still manages tens of millions of dollars in various digital assets in its treasury. But the Mango DAO is unable to pay for any services or personnel in MNGO tokens, which it has done throughout its history. This risks irreparable harm to the DAO and compromises its operations. All the while, the SEC embraces

1

decentralized finance—a field the Mango settling parties pioneered—as fundamental to American innovation.

Apart from these MNGO-related restrictions, the speech injunction at issue is unjust as well. The SEC can criticize its own enforcement actions that included the one against Mango Labs, but Mango Labs and the settling parties cannot. This is not equitable. In the time since Mango Labs filed the underlying motion, the Ninth Circuit grappled with this issue. It observed that the SEC's injunction against speech could in certain situations "impermissibly intrude on First Amendment rights, especially if it prevents civil defendants from criticizing the SEC" and that as-applied challenges, like this one, could succeed on these grounds. *Powell v. United States Sec. & Exch. Comm'n*, 149 F.4th 1029, 1034 (9th Cir., August 6, 2025). In the context of Rule 60, the gag order is not equitable in this case, particularly where one of the parties, the DAO, is an unincorporated entity with many members across the world.[1]

The SEC itself sought Rule 60 relief in the *Ripple* case in this district court, arguing that its sweeping shift away from DeFi enforcement constituted an extraordinary circumstance beyond a mere policy shift. Now, in this case, however, the SEC invokes Judge Torres's denial. But the circumstances explain why different outcomes in each case make sense. In *Ripple*, the case was fully litigated through summary judgment. A permanent injunction issued based on the SEC's claim that Ripple would continue its violations. Further, the parties had an alternative equitable path forward through appeal. The Opposition brief does not explain how this directs the same outcome here, in a case that (a) was not litigated; (b) where Mango Labs is not only not at risk of further violations, but was a victim that cooperated with the government; and (c) where the SEC

---

[1] The SEC argues Mango DAO did not move for relief, but the Court has the authority to independently determine whether the injunctions that the SEC now enforces are equitable against all settling parties.

has wholesale repudiated its theories as applied to DeFi, which is distinct from Ripple's centralized approach. The important point is that the SEC is the one who has taken the position that its repudiations are exceptional and should be estopped from now arguing otherwise.

The SEC takes the position that Mango Labs agreed to the deal, but that is not the issue. Mango Labs' request for relief is not driven by it changing its mind about the deal. It is driven, rather, by the SEC changing its mind about the entire theory of its case while holding Mango Labs and the other settling parties to onerous ongoing injunctions. Contrary to the SEC's counterfactual, had Mango Labs not agreed to the Settlement, it would have given up nothing. Nothing would have happened. The SEC likely would not have even sued, given the timing of the Settlement and the election. Mango Labs and the settling parties were the last deal in the door.

The SEC's position would swallow Rule 60 and ensure that every consent judgment could never be reopened because a deal is always a deal. According to the SEC, if a party has a lawyer and signs a settlement, that ends the story. But there are, however, very rare situations where it makes sense to revisit a settlement in light of changing equitable circumstances. This is precisely the rare sort of circumstance that merits such a thing. Mango Labs' request for relief is narrow and limited—seeking only to bring it into line with the SEC's own statements that enforcement actions against DeFi were arbitrary, unjust, and unfair, as are the injunctions under which Mango Labs exists every day today and moving forward in the absence of relief.

## **ARGUMENT**

### I.     **The SEC's Historic Repudiation Constitutes Extraordinary Circumstances that Warrant Relief.**

Never has the SEC looked back at an entire category of enforcement actions and declared them arbitrary, capricious, and unjust. Never before has the SEC then dismissed those enforcement actions, *en masse*. And never has the SEC then embarked on a regulatory mission to cultivate the

very forms of businesses that it previously sought to litigate against.  This is the first time such a thing has occurred, and fortunately Rule 60 provides a remedy reopening a settlement in such an exceptional circumstance.

The SEC characterizes the many quotes from the SEC as based solely on "statements by individual Commissioners."  (Opp. at 12.)  The SEC's shift, however, is evidenced by a series of concrete actions and repudiations beyond mere individual commissioner statements.   The repudiation is a whole-of-government repudiation across the executive branch.  Even in the time since Mango Labs filed its opening brief, this repudiation has continued.  The White House, on July 30, 2025, for instance, issued a digital asset report that observed the "stark" "difference" between the current administration's approach and the prior one.[2]  The "aggressive strategy of regulation by enforcement" that ensnared Mango Labs, according to the White House report, "created a hostile environment for crypto entrepreneurs."  SEC Chairman Paul Atkins, in August 2025, discussed the SEC's new "Project Crypto" initiative, which is an "initiative to modernize the securities rules and regulations to enable America's financial markets to move on-chain."[3]  Just last week, Chairman Atkins commented on the harmonization between SEC and the "new day" at the SEC and CFTC.[4]

The SEC's reliance on *Tapper v. Hearn*, 833 F.3d 166 (2d Cir. 2016) and *Marrero Pichardo v. Ashcroft*, 374 F.3d 46 (2d Cir. 2004) is misplaced.  Neither case involved the type or breadth of institutional repudiation present here.  *Tapper* concerned a narrow change in decisional

---

[2] *See* https://www.whitehouse.gov/presidential-actions/2025/01/strengthening-american-leadership-in-digital-financial-technology/
[3] *See* https://www.sec.gov/newsroom/speeches-statements/atkins-digital-finance-revolution-073125
[4] *See* https://www.sec.gov/newsroom/speeches-statements/atkins-092925-harmonization-new-era-collaboration-between-sec-cftc

law regarding campaign finance that the court held ultimately did not undermine its original ruling. *Marrero* focused on statutory interpretation in an immigration context not similar to the situation here.

The SEC cannot reasonably argue that its new approach does not entitle Mango to Rule 60(b) relief (Opp. at 12), while simultaneously granting similarly situated entities such relief. If another group started a DAO like Mango tomorrow, they could do everything that Mango is alleged to have done by the SEC and not face any enforcement. The Mango parties, however, are enjoined from pursuing the same sort of innovation that the SEC is actively encouraging others to pursue. Nor can the SEC claim that statements from the Chairman, Commissioners, and the executive branch are not reflective of the Commission's official position. The SEC relies on *Coinbase, Inc. v. SEC*, 126 F.4th 175 (3d Cir. 2025), but the SEC dismissed the case only a month after the cited decision. While the opinion held that the SEC was not compelled to engage in rulemaking, it also found that the agency's order was "conclusory and insufficiently reasoned." *Id.* at 203. The rule that "an agency is not bound by the actions of its staff" applies only where the agency has not endorsed those actions. *See Mobil Pipe Line Co. v. FERC*, 676 F.3d 1098, 1103 (D.C. Cir. 2012) (internal citations omitted); *Eisen v. Temple U.*, No. CIV.A. 01-4165, 2002 WL 1565331, at *2 (E.D. Pa. July 9, 2002) ("the conduct of an official clothed with authority…may itself be sufficient to constitute the binding policy and therefore the action of the entity"); *Univ. of Tex. M.D. Anderson Cancer Ctr. v. HHS*, 985 F.3d 472, 479 (5th Cir. 2021) ("It is a bedrock principle of administrative law that an agency must treat like cases alike"); *Noranda Alumina, LLC v. Perez*, 841 F.3d 661, 665 (5th Cir. 2016) ("[A]dministrative agencies must apply the same basic rules to all similarly situated [parties]").

Here, the SEC has endorsed its Commissioners' views and has acted accordingly. It is of no import that each case the SEC dismissed differs, that they were not litigated to a judgment, or any of the other procedural distinguishing factors the SEC highlights. The point is that the SEC has taken the position that its enforcement wave, which included this action, was unjust, unfair, and arbitrary. It did not have a basis in law, according to the SEC. Under these circumstances, the Court need not enforce ongoing injunctive relief.

## II.    The Prospective Injunctions are Inequitable and Merit Set Aside Under Rule 60.

The ongoing injunctions imposed by the Settlement are substantially more burdensome than the SEC describes. The Settlement's restrictions are not merely backward-looking. They prospectively prohibit all the settling parties from acquiring and trading MNGO tokens despite an active market. The Mango DAO manages a treasury worth tens of millions of dollars. It has used MNGO tokens for years to pay for services. The inability to trade in MNGO materially harms the DAO. Any other DAO, in the meantime, can trade in MNGO and issue tokens that have no difference from the MNGO tokens.

The Mango settling parties could not have foreseen the SEC's dramatic about-face repudiation that, by the SEC's own admission, began "more than five months after the final judgment was entered." (Opp. at 7.) The law does not require parties to settlements to anticipate every conceivable exigency. *See Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 385 (1992) (rejecting the argument that modification is limited to unforeseen and unforeseeable changes); *SEC v. Lewis*, 423 F. Supp. 2d 337, 341 (S.D.N.Y. 2006) (rejecting the SEC's inflexible application of *Rufo*).

Further, the Settlement restricts all the settling parties' speech. Contrary to the SEC's assertions, these speech restrictions are explicit: Mango "will not take any action or make or

6

permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis….” (Dkt. No. 4.). Further, Mango “will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations, without also stating that Defendant does not deny the allegations[.]” (*Id.*)  The SEC’s suggestion that these provisions are benign ignores the reality that Mango is severally liable and the restrictions extend broadly, impacting numerous stakeholders.  The inequity is stark: the SEC remains free to publicly criticize its own enforcement action against the Mango Markets settling parties, and the SEC does so essentially weekly.  But the Mango Markets settling parties are not permitted to criticize the SEC’s enforcement action or say anything “creating the impression that the complaint is without factual basis[.]”

Here there was no meaningful bargaining:  The Mango settling parties, like many targets, were presented with a Hobson’s choice—settle or “bet the farm.”  *See Cochran v. U.S. Securities and Exch. Comm’n*, 20 F.4th 194 (5th Cir. 2021), *aff’d sub nom. Axon Enter., Inc. v. Fed. Trade Comm’n*, 598 U.S. 175 (2023) (Gorsuch, J., concurring) (holding “the SEC places substantial pressure on targets to choose the former”).  Even where a party “voluntarily” waives constitutional rights, the SEC’s use of gag provisions as a condition of settlement raises serious constitutional questions. *See SEC v. Moraes,* No. 22-CV-8343 (RA), 2022 WL 15774011, at *3 (S.D.N.Y. Oct. 28, 2022) (“the No-Admit-No-Deny Provision has all the hallmarks of a prior restraint on speech… By preventing defendants from publicly defending themselves, or even criticizing the SEC [] the Provision denies the public the opportunity to scrutinize the government's enforcement practices”). The Ninth Circuit recently confirmed future as-applied First Amendment challenges, like this one, remain viable against the SEC.  *Powell*, No. 24-1899.

Accordingly, the Settlement's speech restrictions violate the First Amendment and should be nullified. *See, e.g.*, *Crosby v. Bradstreet Co.*, 312 F.2d 483, 485 (2d Cir. 1963) (injunction constituted "a prior restraint" where enjoined party had no right to publish and fact that parties agreed to it was immaterial); *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 222 (4th Cir. 2019) (invalidating disparagement clause that amounted to waiver of First Amendment rights); *U.S. v. Richard*s, 385 Fed. Appx. 691, 693 (9th Cir. 2010) (invalidating portion of plea agreement that restricted defendant from making public comments about former commissioner).

Rule 60's equitable inquiry exists for precisely such a situation, where the settling parties are precluded from participating in any public debate about a subject that is of important public interest—the SEC's treatment of DeFi and Mango Markets.  For this reason and due to the onerous complex MNGO token-related injunctions, Rule 60 relief is appropriate.

### III.    Voluntary Consent does not Defeat Rule 60 Relief.

The SEC's reliance on Mango's "voluntary and deliberate" consent to the Settlement does not sway the Rule 60(b) analysis.  Rule 60(b) expressly empowers courts to revisit and modify prior judgments—including those entered by consent—when subsequent developments render continued enforcement inequitable.  *See, e.g., City of Duluth v. Fond Du Lac Band of Lake Superior Chippewa*, 702 F.3d 1147, 1154 (8th Cir. 2013).  Nowhere does Rule 60(b) preclude relief based on the parties' consent; indeed, the rule is silent on consent as a limiting factor, and the SEC offers no authority to the contrary.

It is axiomatic that all settlement agreements involve consent.  What is not inherent, however, are unanticipated and unforeseen events that fundamentally alter the equities underlying the original agreement.  The "purpose of Rule 60(b)" is precisely to provide "an exception to finality" and permit the court to resolve disputes on their merits when justice so requires. *See Mandala v. NTT Data, Inc.*, 88 F.4th 353 (2d Cir. 2023) (internal citations omitted).  Thus, where

a party faces inequity due to unforeseen changes in factual or legal circumstances after entry of judgment, Rule 60(b) is designed to provide relief.

The SEC's argument about finality and agreeing to deals goes the other way.  If injunctions are not changed in the face of changed equitable balance, this actually would "unfairly deny those [] the opportunity to resolve their disputes amicably."  That is why Rule 60 is in the public interest. *See, e.g.*, *NML Cap., Ltd. v. Republic of Argentina*, No. 14-cv-8601 (TPG), 2016 WL 715732, at *7 (S.D.N.Y. Feb. 19, 2016), *aff'd sub nom. Aurelius Cap. Master, Ltd. v. Republic of Argentina*, 644 F. App'x 98 (2d Cir. 2016) (vacating the injunctions would best serve the public interest).

Rule 60 permits a court to consider "a wide range of factors, including the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process." *Pettiford v. City of Yonkers,* No. 14 CIV. 6271 (JCM), 2018 WL 3364394, at *3 (S.D.N.Y. July 10, 2018).

Here, those factors support granting Mango Rule 60(b) relief.  This case presents the rare circumstance in which relief is necessary to satisfy the Second Circuit's mandate that consent judgments be "fair and reasonable" without disserving "the public interest."  *U.S.S.E.C. v. Citigroup Glob. Markets, Inc*., 752 F.3d 285, 294 (2d Cir. 2014).  Finality does not override equity where, as here, changed circumstances "become[] contrary" and undermine "what the earlier [Settlement] was designed to enforce[.]"  *City of Duluth*, 702 F.3d at 1153; *see also Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981) ("Rule 60(b) seeks to strike a delicate balance between [] the desire to preserve the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts") (internal citation omitted).

Notably, the SEC (not Mango) is responsible for the fundamental changes in enforcement policy.  *United States v. Swift & Co*., 286 U.S. 106, 114 (1932) ("We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions, though it was

entered by consent"); *SEC v. Alexander*, No. 06-cv-3844, 2013 WL 5774152, at *2 (E.D.N.Y. Oct. 24, 2013) (Rule 60(b) relief appropriate in settled actions where ongoing sanction is no longer equitable).

The SEC's additional argument that Mango's motion is untimely is unavailing.  (Opp. at 7, 9.)  Earlier this year, prior to May 2025, Mango Labs attempted to speak to the SEC about its request for Rule 60 relief.  This led to a sequence of letters, after which Mango Labs filed the motion.  All the while, the SEC's about face became more pronounced, shocking, and prominent.  Even to this day, the SEC continues to escalate its reversal of course.  Mango Labs filed its Motion for Relief less than one year after entry of the Settlement (Dkt. No. 9) and promptly after learning of the SEC's repudiation and the wave of dismissals that followed the new Administration's policy shift in January 2025, after attempting to discuss the issue directly with the SEC.  A year is reasonable under Rule 60(b).  *See, e.g., P.T. Busana Idaman Nurani v. Marissa by GHR Industries Trading Corp.,* 151 F.R.D. 32, 35 (S.D.N.Y. 1993*)* (motion made two years after entry of final judgment deemed reasonable); *Hamilton v. Lee*, 188 F. Supp. 3d 221 (E.D.N.Y. 2016) (motion timely within one year of judgment).

The SEC asks the Court to consider the risk of opening the floodgates.  But a bigger risk is that the public will lose confidence in the court's equitable application of the law.  A set of entities doing the same thing as Mango Markets, today, is not enjoined under the same theories that enjoin the Mango settling parties.  It is not an issue of the Mango parties agreeing to the injunction.  The issue is that the legal basis for the injunction, according to the SEC's own pronouncements and its actions, was apparently part of an—according to the SEC—arbitrary and unfair enforcement wave.  The Court can readily adopt a limiting principle in granting Mango Labs' request for narrow and tailored relief.  It need only find that in this case, where a party is the very last settling party in the

door, on a theory that the agency repudiates wholesale and underscores was brought unfairly, that party should not be held to ongoing onerous injunctions related to token trading.  Nor should such entities be gagged, while the SEC is permitted to criticize itself in the very specific context (Decentralized Finance) where the Mango Markets parties' settlement is the marquee.  This is not a case of buyer's remorse on behalf of the Mango parties.  The remorse is being expressed by the SEC publicly as well as in other cases in this Court, but here the SEC attempts to enforce a set of injunctions on a legal theory that it itself has repudiated.

## CONCLUSION

The SEC's historic reversal to decentralized finance and digital asset enforcement in the specific context of this case constitutes the type of extraordinary and unforeseen circumstances that Rule 60(b) is designed to address.  Mango Labs thus respectfully requests that the Court grant its request for narrow relief and reopen and set aside the Settlement.

Dated: October 6, 2025.

Respectfully submitted,
By:   */s/ Michael Burshteyn*

**MICHAEL BURSHTEYN**
(*pro hac vice*)
**GREENBERG TRAURIG, LLP**
101 Second Street, Suite 2200
San Francisco, California 94105
(415) 655-1300
michael.burshteyn@gtlaw.com

**RAFAEL YAKOBI**
(*pro hac vice*)
**THE CRYPTO LAWYERS, PLLC**
11035 Lavender Hill Dr, Ste. 160-220
Las Vegas, NV 89135
(619) 317-0722
rafael@thecryptolawyers.com

**SYDNEY PARKS**
**GREENBERG TRAURIG, LLP**

One Vanderbilt Avenue
New York, NY 10017
(212) 801-6430
sydney.parks@gtlaw.com

*Attorneys for Mango Labs, LLC*

12

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to the Honorable Jennifer L. Rochon's Individual Rules of Practice in Civil Cases that the total number of words in this Memorandum of Law, according to the word count on the word processing program utilized, inclusive of point headings and footnotes, and exclusive of the caption, table of contents, table of authorities, signature block and this certificate of compliance is 3,440 words and complies with the word count limits set forth in the Rules.

       Dated: October 6, 2025.       Respectfully submitted,

                                   By: __/s/ *Michael Burshteyn*