UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES SECURITIES AND
EXCHANGE COMISSION,

                Plaintiff,

-against-

MANGO LABS, LLC, MANGO DAO, and
BLOCKWORKS FOUNDATION,

                Defendants.

Case No. 1:24-cv-07334 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

On June 28, 2025, Defendant Mango Labs, LLC ("Defendant" or "Mango Labs") moved for relief from its consented-to Final Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 60(b). *See* Dkt. 13 ("Mot."); *see also* Dkt. 14 ("Br."); Dkt. 15 ("Parks Decl."); Dkt. 24 ("Reply"). Plaintiff United States Securities and Exchange Commission ("Plaintiff" or the "SEC") opposes Mango Labs' motion. *See* Dkt. 22 ("Opp."); Dkt. 23 ("Qualls Decl."). The motion is fully briefed. For the following reasons, the Court DENIES Defendant's motion for relief from judgment.

## BACKGROUND

This litigation arises out of the SEC's enforcement action against the operators of Mango Markets, a crypto asset trading platform. Since August 2021, Mango Markets has offered its users a variety of services, including trading crypto assets. Dkt. 1 ("Complaint" or "Compl.") ¶ 1. Mango Markets was developed and operated by Mango Labs, a Wyoming corporation, and Blockworks Foundation, a Panamanian entity; Mango DAO, an unincorporated organization, is the governing body of Mango Markets. *Id.* ¶¶ 1, 15-17. In addition to facilitating crypto asset trading, Mango Markets also offered its own cryptocurrency, MNGO. *Id.* ¶ 2.

On September 27, 2024, the SEC filed an enforcement action, alleging that Defendants were violating the securities laws. *See generally id.* ¶¶ 7-8. The SEC's complaint alleged that Mango Labs violated Section 15(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"). *Id.* ¶ 8. The SEC also alleged that Blockworks Foundation and Mango DAO engaged in the offer and sale of unregistered securities in violation of Sections 5(a) and (c) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a), 77e(c). *Id.* ¶ 7.

The SEC and Mango Labs, along with the other two defendants, settled the litigation and agreed to the entry of Final Judgments and Consents to those Judgments. *See* Dkt. 7; *see also* Dkts. 4-6. The Court entered these consented-to Final Judgments on October 1, 2024. *See* Dkt. 9 (Mango Labs Final Judgment and Consent); Dkt. 8 (Mango DAO Final Judgment and Consent); Dkt. 10 (Blockworks Foundation Final Judgment and Consent).

Under the Final Judgment to which Mango Labs consented, Mango Labs agreed to several forms of retrospective and prospective relief. Among other things, it agreed to a permanent injunction barring Mango Labs from violating Section 15(a) of the Exchange Act and a civil penalty of $111,614. *See* Dkt. 9 at 1-2. Mango Labs further agreed to six undertakings, including refraining from "soliciting any trading platform to allow trading in MNGO and from offering or selling, directly or indirectly, MNGO, unless such offering is properly registered under applicable laws." *Id.* at 4. Mango Labs also executed a Consent, agreeing to the entry of final judgment, *id.* at 6, waiving the right to a jury trial and appeal of the final judgment, *id.* at 9, acknowledging that the settlement resolved the claims in the action, *id.*, and agreeing to abide by the SEC's "no-admit, no-deny policy" that prohibits a settling party from publicly denying the allegations in the SEC's complaint, or claiming that the Consent is not an admission of the allegations without also stating that it is not a denial of such allegations, *id.* at 10; *see* 17 C.F.R.

§ 202.5(e).  On December 6, 2024, Mango Labs certified that it was in compliance with all of the agreed-to undertakings in the Final Judgment.  *See* Qualls Decl. ¶ 4; *see also* Dkt. 23-2.

On June 28, 2025, Mango Labs filed a motion for relief from the Final Judgment pursuant to Rule 60(b).  *See generally* Mot.  Arguing that there has been a recent shift in the SEC's enforcement policy in the context of cryptocurrency, including voluntary dismissals of several pending enforcement actions, Mango Labs asks the Court to set aside the Final Judgment against it and dismiss the case with prejudice.  *See* Br. at 1-4.  The SEC opposes this motion.  *See generally* Opp.  The other two defendants in this suit, Mango DAO and Blockworks Foundation, have not sought similar relief or otherwise taken a position on Mango Labs' motion.  Br. at 4 n.9.

## LEGAL STANDARD

The "finality of judgments" is "[v]ery high among the interests" of the judicial system.  *United States v. Cirami*, 563 F.2d 26, 33 (2d Cir. 1977).  Nevertheless, "[i]n extraordinary circumstances" the interests of justice may override the need for finality.  *Andrulonis v. United States*, 26 F.3d 1224, 1235 (2d Cir. 1994).  In those rare circumstances, a party may seek relief from a final judgment under Rule 60(b).  *Waetzig v. Halliburton Energy Servs., Inc.*, 604 U.S. 305, 309 (2025) (observing that Rule 60(b)'s purpose "is 'to make an exception to finality'" (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005))).  Under Rule 60(b):

> [A] court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Rule 60(b) is "a mechanism for extraordinary judicial relief [available] only if the moving party demonstrates exceptional circumstances."  *Motorola Credit Corp. v.*

3

*Uzan*, 561 F.3d 123, 126 (2d Cir. 2009) (alteration in original) (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)); *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001) ("A motion for relief from judgment is generally not favored[.]").  Here, Mango Labs seeks relief under Rule 60(b)(5) and (b)(6).

Rule 60(b)(5) "permits a party to obtain relief from a judgment or order if, among other things, 'applying [the judgment or order] prospectively is no longer equitable.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (alteration in original) (quoting Fed R. Civ. P. 60(b)(5)).  To "obtain relief under this provision, a movant must show, first, that the challenged order is prospective in nature, and second, that it would be inequitable to permit the order to remain in place." *Sec. & Exch. Comm'n v. Bronson*, 602 F. Supp. 3d 599, 615 (S.D.N.Y. 2022) (quoting *Nicosia v. Amazon.com, Inc.*, No. 14-cv-04513 (ILG) (LB), 2021 WL 4480487, at *2 (E.D.N.Y. Sept. 30, 2021)), *aff'd sub nom.*, *U.S. Sec. & Exch. Comm'n v. Bronson*, No. 22-1045-cv, 2022 WL 5237474 (2d Cir. Oct. 6, 2022) (summary order).  A final judgment has prospective application when the judgment is "'executory' or involves 'the supervision of changing conduct or conditions.'" *Tapper v. Hearn*, 833 F.3d 166, 170-71 (2d Cir. 2016) (quoting *DeWeerth v. Baldinger*, 38 F.3d 1266, 1275 (2d Cir. 1994)).  Typically, "judgments involving injunctions have prospective application, while money judgments do not." *DeWeerth*, 38 F.3d at 1275; *accord Bronson*, 602 F. Supp. 3d at 615-16 (collecting cases).  After this first prong is met, the movant must then show that "a significant change either in factual conditions or in law" renders the application of the final judgment inequitable. *See Rufo v. Inmates of Suffolk Cnty. Jail,* 502 U.S. 367, 384 (1992).  This burden can be met "when changed factual conditions make compliance with the [judgment] substantially more onerous," "when a [judgment] proves to be unworkable because of unforeseen obstacles," or "when enforcement of the [judgment] without modification would be detrimental to the public interest." *Id.*  Relief under Rule 60(b)(5),

4

however, is not available simply because "it is no longer convenient to live with the terms of a [judgment]." *Id.* at 383. "[M]odification should [also] not be granted where a party relies upon events that actually were anticipated at the time it entered into a [settlement]." *Id.* at 385.

Rule 60(b)(6) permits a court to grant a party relief from a final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). This "catchall provision" is available "only when Rules 60(b)(1) through (b)(5) are inapplicable" and the party seeking relief demonstrates "extraordinary circumstances." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 210-11 (2025) (internal quotation marks omitted) (quoting *Kemp v. United States*, 596 U.S. 528, 533 (2022)); *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) ("Recognizing Rule 60(b)(6)'s potentially sweeping reach, courts require the party seeking to avail itself of the Rule to demonstrate that 'extraordinary circumstances' warrant relief.").

A request for relief under Rule 60(b)(5) and (b)(6) "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). "To determine the timeliness of a motion brought pursuant to Rule 60(b)(6), [courts] look at the particular circumstance of each case and 'balance the interest in finality with the reasons for delay.'" *Grace v. Bank Leumi Tr. Co.*, 443 F.3d 180, 190 n.8 (2d Cir. 2006) (quoting *Kotlicky v. U.S. Fidelity & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987)).

## DISCUSSION

As a preliminary matter, the Court finds that Mango Labs' motion for relief under Rule 60(b)(5) and (b)(6) is timely because Mango Labs filed it within one year of the final judgment, and the alleged change in the SEC's enforcement approach began in January of 2025. *See P.T. Busana Idaman Nurani v. Marissa by GHR Indus. Trading Corp.*, 151 F.R.D. 32, 35-36 (S.D.N.Y. 1993) (finding a Rule 60(b) motion brought two years after the judgment timely when the movant learned about the change in factual circumstances two months before the motion); *Hamilton v. Lee*, 188 F. Supp. 3d 221, 242 (E.D.N.Y. 2016) (finding a Rule 60(b) motion

5

brought one year after the judgment timely when it was filed one month after movant examined newly available evidence).  Furthermore, the parties do not dispute that the consented-to Final Judgment imposes prospective relief for purposes of Rule 60(b)(5).  *See* Br. at 15; Opp. at 14.  Mango Labs is enjoined from violating Section 15(a) of the Exchange Act, Dkt. 9 at 1, prohibited from trading MNGO, *id.* at 3-4, and must abide by the SEC's no-admit, no-deny policy, *see id.* at 10.  The Court also retained jurisdiction to enforce the terms of the Final Judgment.  *Id.* at 5.

However, Mango Labs has not satisfied the second requirement under Rule 60(b)(5) by showing that "a significant change either in factual conditions or in law" renders the application of the consented-to Final Judgment inequitable.  *Rufo,* 502 U.S. at 384.  Mango Labs also has not shown that extraordinary circumstances warrant relief under Rule 60(b)(6).

**I.    The SEC's Alleged Change in Enforcement Strategy Does Not Render the Final Judgment Inequitable or Constitute an Extraordinary Circumstance**

Mango Labs argues that the SEC's voluntary dismissals of pending enforcement actions in other crypto-related matters, as well as statements by individual SEC Commissioners criticizing the SEC's past enforcement strategies, "represent a fundamental change in circumstances that run contrary to 'what the earlier consent decree was designed to enforce.'"  Br. at 14-15 (citation omitted).  According to Mango Labs, this "historic, unprecedented" change in circumstances, *id.* at 1, warrants the Court setting aside Mango Labs' consented-to Final Judgment, *see id*. at 12-14.  The Court disagrees and finds that the SEC's alleged altered enforcement strategy does not render the Final Judgment inequitable or constitute extraordinary circumstances sufficient for relief from that Judgment.

The SEC's change in enforcement policy is not "a significant change either in factual conditions or in law" that makes the Final Judgment inequitable.  *Rufo*, 502 U.S. at 384.  To

start, there has been no change in the securities laws or binding case law that precludes its application in the cryptocurrency context. *Cf. Sec. & Exch. Comm'n v. Coinbase, Inc.*, 726 F. Supp. 3d 260, 283-84 (S.D.N.Y. 2024) (explaining that the SEC's decision to bring enforcement actions to regulate emerging technologies is a function of enforcing the law, not changing it), *motion to certify appeal granted*, 761 F. Supp. 3d 702 (S.D.N.Y. 2025). Furthermore, statements by individual SEC Commissioners allegedly repudiating prior enforcement strategies, *see* Br. at 13-14 (citing to public statements and speeches made by individual SEC Commissioners), do not constitute a change in the law because such statements do not create rules of decision or bind the Court. *See, e.g.*, *Coinbase, Inc. v. Sec. & Exch. Comm'n*, 126 F.4th 175, 191 (3d Cir. 2025) ("[I]ndividual Commissioners and staff members do not speak for the SEC, and their statements do not necessarily reflect the agency's official position."); *Lutheran Church-Missouri Synod v. Fed. Comm'cns Comm'n*, 154 F.3d 487, 489 (D.C. Cir. 1998) ("[W]e are aware of no proposition of administrative law that allows the assurances of individual Commissioners — even a majority — to transform a prospective enforcement policy into a retroactive rule of decision."); *cf.* 17 C.F.R. § 200.735-4(d)(2)(ii)(A) (requiring all public statements by SEC employees to include a disclaimer that "[t]he [SEC] disclaims responsibility for any private publication or statement of any SEC employee or Commissioner"). Thus, this Court does not agree with Mango Labs' contention that the Court should "treat" the SEC's new enforcement approach "as a change in law." Br. at 14. Moreover, as for Rule 60(b)(6), even if there were a change in decisional law, such a change "does not constitute an 'extraordinary circumstance' for the purposes of Rule 60(b)(6)." *Tapper*, 833 F.3d at 172 (quoting *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 56 (2d Cir. 2004)); *see Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 757 (2d Cir. 1986) ("[I]t is well settled that a change in decisional law is not grounds for relief under Rule 60(b)(6)."); *Bronson*, 602 F. Supp. 3d at 617 (collecting cases).

The changed factual circumstances of the SEC's new enforcement approach, including its recent voluntary dismissals of several other cryptocurrency enforcement actions, *see* Br. at 7, also does not justify Rule 60(b)(5) or (6) relief. Courts have long recognized that the government can take differing positions in different litigations. *See, e.g.*, *United States v. Mendoza*, 464 U.S. 154, 162 (1984) (holding "that nonmutual offensive collateral estoppel . . . does not apply against the government"); *Benenson v. Comm'r of Internal Revenue*, 910 F.3d 690, 697 (2d Cir. 2018) ("In general, nonmutual offensive collateral estoppel is not allowed against the government."). As the Supreme Court explained in *Mendoza*, "the Government is not in a position identical to that of a private litigant" because it must make litigation decisions in "a far greater number of cases on a nationwide basis" and "consider[] a variety of factors, such as the limited resources of the government." 464 U.S. at 159-61 (citation modified). Moreover, "the panoply of important public issues raised in governmental litigation may quite properly lead successive Administrations of the Executive Branch to take differing positions with respect to the resolution of a particular issue." *Id.* at 161. Hence, an individual Commissioner's criticism of earlier enforcement approaches, and the SEC's decision to voluntarily dismiss other civil enforcement actions, do not require the agency to support, or the Court to agree to, setting aside an earlier consented-to final judgment in an unrelated case. Indeed, each of the stipulations of dismissal in Mango Labs' cited cases states that the "Commission's decision to seek dismissal of this Litigation does not necessarily reflect the Commission's position on any other case [or litigation or proceeding]." *See, e.g.*, Joint Stipulation to Dismiss, and Releases at 2, *Sec. & Exch. Comm'n v. Coinbase, Inc.*, No. 23-cv-04738 (KPF) (S.D.N.Y. Feb. 27, 2025), ECF No. 176.

The cases on which Mango Labs relies are also distinguishable from the case at hand because they all involved consensual dismissals by the parties during then-active litigations. Br.

8

at 7 (citing *Sec. & Exch. Comm'n v. Cumberland DRW LLC*, No. 24-cv-09842, at ECF No. 46 (Mar. 27, 2025) and ECF No. 47 (Mar. 31, 2025) (N.D. Ill.); *Sec. & Exch. Comm'n v. Consensys Software Inc.*, No. 24-cv-04578, at ECF No. 25 (E.D.N.Y. Mar. 27, 2025); *Sec. & Exch. Comm'n v. Payward, Inc.*, No. 23-cv-06003, at ECF No. 127 (N.D. Cal. Mar. 27, 2025); *Sec. & Exch. Comm'n v. Binance Holdings Ltd.*, No. 23-cv-01599, at ECF No. 301 (E.D.N.Y. May 29, 2025)). None involved one-sided Rule 60(b) motions for relief from a settled closed case, which courts repeatedly reject. *See United States v. Bank of New York*, 14 F.3d 756, 759 (2d Cir. 1994) (denying defendant Rule 60(b) relief to vacate a consent decree because it would "undermine the finality of judgments in the litigation process"); *Sampson v. Radio Corp. of Am.*, 434 F.2d 315, 317 (2d Cir. 1970) ("A motion under Rule 60(b) cannot be used to avoid the consequences of a party's decision to settle the litigation or to forego an appeal from an adverse ruling."); *see also Sec. & Exch. Comm'n v. Alexander*, No. 06-cv-03844 (NGG) (RER), 2013 WL 5774152, at *3 (E.D.N.Y. Oct. 24, 2013) (finding that where a party seeks to modify a consent judgment instead of a post-trial judgment, there is "add[ed] weight to the burden that already exists for a party seeking modification under Rule 60"); *Sec. & Exch. Comm'n v. Longfin Corp.*, No. 18-cv-02977 (DLC), 2020 WL 4194484, at *2 (S.D.N.Y. July 21, 2020) ("Rule 60(b)(6) is not intended to relieve a party from an agreement that he voluntarily entered but now regrets.  Dissatisfaction of this kind does not merit this extraordinary relief."), *aff'd sub nom.*, *Sec. & Exch. Comm'n v. Altahawi*, 849 F. App'x 323 (2d Cir. 2021) (summary order).

Mango Labs' reliance on the SEC's position in *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, No. 20-cv-10832 (AT), 2025 WL 2016756 (S.D.N.Y. June 26, 2025), *see* Br. at 8, also does not support Rule 60(b) relief here.  In *Ripple Labs*, the parties jointly requested an indicative ruling that the court would relieve the parties from portions of the final judgment under Rule 60(b) if jurisdiction was restored.  2025 WL 2016756, at *1.  No such joint appeal has been

9

made here. But more importantly, even though the SEC jointly supported relief under Rule 60(b), the *Ripple Labs* court still denied the request for an indicative ruling and held that if jurisdiction was restored to the court, it would reject the request because "exceptional circumstances" were not shown notwithstanding "a change in SEC policy" in the cryptocurrency space. *Id.* at *4. So too here.

The Court is further unpersuaded by the cases cited by Mango Labs in support of its argument that "[i]n light of the SEC's recent pattern of dismissing similar enforcement actions, continued enforcement of the judgment against Mango Labs runs contrary to the public interest" and undermines public confidence in the judicial process. Br. at 18. Mango Labs cites to *Patterson v. Newspaper & Mail Deliverers' Union of New York & Vicinity*, 13 F.3d 33 (2d Cir. 1993) in support of its argument that there may be instances where setting aside a judgment may be warranted despite the public interest in encouraging and enforcing settlements. But the circumstances in *Patterson* were not akin to those here, given that the *Patterson* consent decree was intended to achieve "pervasive change in long-established practices affecting a large number of people," and the court permitted modification of agreed-upon affirmative action programs after finding the decree's purpose had been achieved. *Id.* at 38. Similarly distinguishable is *Pettiford v. City of Yonkers*, No. 14-cv-06271 (JCM), 2018 WL 3364394 (S.D.N.Y. July 10, 2018), where the court granted a *pro se* plaintiff's motion for Rule 60(b) relief after his case was dismissed for failure to prosecute after he presented new evidence demonstrating that there was a substantial chance of success on the merits, and given the preference for resolving issues on their merits. *Id.* at *3-4. Finally, and most notably inapposite from the case at hand, in *Buck v. Davis*, 580 U.S. 100 (2017), the Supreme Court reversed a Rule 60(b) denial, considering the risk of reduced public confidence in the courts, where the defendant "may have been sentenced to death in part because of his race." *Id.* at 123. Here, Mango Labs' regret over its decision to settle prior

to an alleged shift in SEC enforcement strategies is not a comparable basis for relief. As such, Mango Labs has not demonstrated that continued enforcement of the consented-to Final Judgment in this case would erode public confidence in the judicial process or run afoul of the public interest.

In sum, an alleged change in the SEC's approach towards crypto-currency enforcement actions does not render the earlier consented-to Final Judgement inequitable or constitute extraordinary circumstances sufficient to warrant relief under Rule 60(b)(5) or (b)(6).

## II. The Final Judgment's Specific Prospective Obligations Are Not Inequitable

The Court is not convinced that Rule 60(b)(5) relief is separately warranted because the Final Judgment's prospective restrictions on trading MNGO and the no-admit, no-deny restriction are inequitable. *See* Br. at 15-18. Mango Labs agreed to these trading restrictions when it decided to settle. *Rufo*, 502 U.S. at 385 ("Ordinarily . . . modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree."). It does not claim that complying with these restrictions is "substantially more onerous" or "unworkable" due to changed factual conditions; it argues only that the enforcement landscape has changed since they agreed to the settlement. *Id.* at 384. While Mango Labs may now regret its decision to settle, "[a] party's belated recognition of the consequences of [its] decision is not the changed circumstances envisioned by Rule 60(b)(5)." *Longfin Corp.*, 2020 WL 4194484, at *2.

*Sec. & Exchange Comm'n v. Conradt*, 309 F.R.D. 186 (S.D.N.Y. 2015) is persuasive. There, the court denied a Rule 60(b) motion for relief from an SEC consent decree where the defendants' guilty pleas in a parallel criminal case were later vacated in light of a new ruling by the Second Circuit. *Conradt*, 309 F.R.D. at 187. The defendants argued that they would not have settled the civil case in the absence of the criminal convictions, but the court found that this

11

change of circumstances did not constitute "exceptional circumstances" sufficient to warrant relief under Rule 60(b)(5) or (b)(6). *Id.* at 187-88. The court explained that the defendants, "for their own strategic purposes . . . [and] with the advice and assistance of counsel, entered into these agreements voluntarily, in order to secure the benefits thereof, including finality." *Id.* The court pointed out that even if the law had changed, "Rule 60(b) is not intended to allow one side of a settlement agreement to obtain the benefits of finality while placing the other side at risk that future judicial decisions will deprive them of the benefit of their bargain." *Id.* at 188. The court concluded that "[w]hen it comes to civil settlements, a deal is a deal, absent far more compelling circumstances than are here presented." *Id.* Mango Labs similarly voluntarily elected to receive the benefits of the Final Judgment and end the enforcement action brought by the SEC. Even though the enforcement landscape in the cryptocurrency space has allegedly changed, Mango Labs cannot now unwind that finality based on buyer's remorse.

  Likewise, Mango Labs does not identify a change in circumstances that makes the no-admit, no-deny restriction inequitable. Mango Labs is correct that some courts have expressed concern regarding the no-admit, no-deny provision in SEC settlements. *See, e.g.*, *Sec. & Exch. Comm'n v. Moraes*, No. 22-cv-08343 (RA), 2022 WL 15774011, at *5 (S.D.N.Y. Oct. 28, 2022) ("reluctan[tly]" approving Consent Agreement containing provision given First Amendment concerns); *Powell v. United States Sec. & Exch. Comm'n*, 149 F.4th 1029, 1034 (9th Cir. 2025). However, the Court is bound by the Second Circuit's decision in *Sec. & Exch. Comm'n v. Romeril*, 15 F.4th 166 (2d Cir. 2021), where it rejected a Rule 60(b) motion to set aside a judgment because it was not legal error to enter a consent decree that included a no-admit, no-deny provision to which the defendant had agreed. *Id.* at 172. Mango Labs elected not to litigate and instead to consent to the Final Judgment with this provision, well after *Romeril* was decided; thus, there is no changed circumstance that supports Mango Labs' new complaint of inequities.

12

*Id.* ("A defendant who is insistent on retaining the right to publicly deny the allegations against him has the right to litigate and defend against the charges.").[1]

Mango Labs claims that there was no meaningful bargain over the consented-to Final Judgment because the SEC "presented [it] with a Hobson's choice — settle or 'bet the farm.'" Reply at 7. The Court disagrees. "It is a known fact that the commencement of a SEC lawsuit — just like any major litigation — can cause the distraction of management, lead to litigation costs, and ultimately be considered an undesirable event from the perspective of the subject company's shareholders and other stakeholders." *U.S. Sec. & Exch. Comm'n v. Musk*, No. 18-cv-08865 (LJL), 2022 WL 1239252, at *9 (S.D.N.Y. Apr. 27, 2022), *aff'd sub nom.*, *Sec. & Exch. Comm'n v. Musk*, No. 22-1291, 2023 WL 3451402 (2d Cir. May 15, 2023). "[T]he fact that a settlement can avoid those costs, and the negative reaction by shareholders, does not mean that it is coercive or unenforceable." *Id.* Mango Labs "waived certain rights, including the right to trial and the right to publicly deny the allegations against [it]" in exchange for "eliminat[ing] the expense of further litigation and the risk of an adverse judgment, including higher monetary penalties and judicial *findings* that [it] had violated securities laws." *Romeril*, 15 F.4th at 175. While the enforcement landscape may have changed, Mango Labs "cannot in hindsight seek extraordinary relief" simply "because [its] assessment of the consequences was incorrect." *Bank of New York*, 14 F.3d at 759 (citation modified).

## CONCLUSION

For all of these reasons, Mango Labs has not satisfied its burden under Rule 60(b), and the Court DENIES its motion to set aside the Final Judgment at Dkt. 9.

---

[1] Mango Labs' complaint that the restraint is "not equitable in this case, particularly where one of the parties, the DAO, is an unincorporated entity with many members across the world," Reply at 2, rings hollow because Mango DAO has not sought any relief from this Court.

13

The Clerk of the Court is respectfully directed to terminate the motion at Dkt. 13.

Dated: January 21, 2026
New York, New York

                SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge

14